UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

UNITED STATES OF AMERICA            CASE NO. 18-cr-00087

VERSUS                              CHIEF JUDGE HICKS

BRYAN THOMAS ROBINSON               MAGISTRATE JUDGE HORNSBY


## REPORT AND RECOMMENDATION

**Introduction**

Bryan Robinson ("Defendant") is charged in a three count indictment with being a felon in possession of a firearm, possession of marijuana with intent to distribute, and possession of a firearm in furtherance of drug trafficking. The charges arise out of a traffic stop by Shreveport police for driving a vehicle without a license plate. Before the court is Defendant's **Motion to Suppress. Doc. 22**. For the reasons that follow, it is recommended that Defendant's motion be denied.

**Factual Background**

An evidentiary hearing was held on August 28, 2018. The evidence at the hearing, including the dash camera recording (Ex. 2), established the following facts.

Shreveport Police Corporal Rodney Medlin was on routine patrol in a high crime area of Shreveport when he saw a Ford car without a license plate. Corp. Medlin initiated a traffic stop for a violation of La. R.S. 32:53. Defendant was the driver of the vehicle. There was one other passenger in the car.

When Corp. Medlin activated his emergency lights and siren, he saw the driver of the car reaching around under the front seat. This caused Medlin to suspect there was a gun or other illegal contraband under the front seat. The recorded audio reveals that Medlin voiced concern about how long it was taking for back-up to arrive. Video at 8:49:48.

Corp. Medlin approached the driver's side window of Defendant's car and began to explain why he made the traffic stop. Defendant immediately interrupted and volunteered that he had just recently obtained liability insurance on the car and that his registration, tags, and license were at his home.

Medlin asked Defendant and the passenger if they had any identification, guns, or anything illegal on them. They stated that they did not. About this time, Corp. Michael Schulz arrived for back-up. Both officers smelled a strong odor of marijuana coming from the car. Defendant admitted that they had recently smoked marijuana. Defendant and the passenger appeared to be very nervous.

Corp. Medlin told Schulz that Defendant was reaching under the seat during the stop, so Medlin wanted to see what was on the floorboard. The officers asked Defendant and the passenger to step out of the car. The officers patted the two men down for officer safety. Once the men were removed from the car, the officers commented that the strong odor of marijuana appeared to be coming directly from the two men rather than from the interior of the car.

Corp. Medlin handcuffed and placed Defendant in the back of Medlin's patrol car. Medlin testified that he Mirandized Defendant while he was doing the Terry pat down. The audio does not reflect the Miranda rights being given to Defendant. Medlin testified

Page 2 of 9

that the body microphone will sometimes cut out due to the interference with the microphone inside of the car. Schulz confirmed that the officers' microphones will also not pick up sounds sometimes due to inference with their clothes. Schulz credibly testified that he heard Medlin read the Miranda rights to Defendant during the pat down.

At some point during the stop, Corp. Medlin ran a computer check on Defendant and his license. The court cannot determine when that happened because the officers did not remember and the audio does not refer to the computer check. Nevertheless, Medlin told Defendant that he was being detained for no license plate and driving with a suspended driver's license. Exhibit 1 (citation); video 8:52:45. The passenger was not handcuffed, but he was placed in the back of Schulz's patrol car. The passenger was not Mirandized at that time.

Corp. Medlin asked Defendant if there was anything in the car they needed to worry about. Defendant shook his head as if to say no. Medlin then asked Defendant if he had a problem with Medlin looking in the car. Defendant said, "No sir." Video 8:52:49. Medlin told Defendant that if he had a problem with the officers looking in the car, Medlin would call a canine unit. Defendant said, "Yes, sir," confirming that he understood and that the officers could search the car.

The officers found a small, soft-sided ice chest in the trunk of the car. Inside the ice chest were a .45 caliber pistol and ammunition, marijuana, ecstasy pills, a glass bong, a digital scale, and baggies. Defendant admitted that the car was his, but he denied knowing anything about the drugs and gun.

Corp. Medlin approached Corp. Schulz and asked if he (Schulz) had provided <u>Miranda</u> warnings to "him" (the passenger). Shultz mistakenly believed that Medlin was asking whether he (Schulz) had <u>Mirandized</u> Defendant. Shultz stated: "You <u>Mirandized</u> him," referring to Defendant. Medlin acknowledged that he had <u>Mirandized</u> Defendant, but asked Schulz if he had <u>Mirandized</u> the passenger. Schulz finally understood what Medlin meant and replied that he had not yet provided <u>Miranda</u> warnings to the passenger. Video 9:03:23. Schulz then immediately <u>Mirandized</u> the passenger.

Both Defendant and the passenger denied knowing anything about the drugs and gun. The passenger stated that he was walking along the street and Defendant picked him up to give him a ride. The officers told Defendant that the passenger said the gun and drugs belonged to Defendant. Whether the passenger actually said that is not known. If the audio recording reveals the passenger making that statement, the parties did not point it out to the undersigned. It is noted with serious disappointment that the video and audio from Schulz's patrol car was not preserved, apparently because Schulz believed that this case belonged to Medlin. Once the stop was over, Schulz moved on to the next call and thought nothing more about the stop.

Defendant eventually admitted that the drugs and gun belonged to him and not the passenger. Defendant stated that he needed the gun for protection because his neighborhood is dangerous, and he recently lost two friends to violence. He also admitted that he picked up the passenger simply to give him a ride.

**Law and Analysis**

    **The Traffic Stop**

The reasonableness of traffic stops and investigative detentions of motorists who are suspected of criminal activity is analyzed under the framework established in Terry v. Ohio, 392 U.S. 1 (1968); United States v. Rosales Giron, 592 Fed. Appx. 246, 250 (5th Cir. 2014). Under Terry, the court determines the reasonableness of an investigative stop by examining: (1) whether the officer's action of stopping the vehicle was justified at its inception, and (2) whether the officer's actions were reasonably related in scope to the circumstances that justified the stop. Id.

For a traffic stop to be justified at its inception, an officer need only have reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle. United States v. Lopez-Moreno, 420 F.3d 420, 430 (5th Cir. 2005). As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred. Whren v. United States, 517 U.S. 806, 810 (1996). Lawful cause to make a traffic stop exists when a defendant commits a traffic violation and a law enforcement officer observes the violation. United States v. Khanalizadeh, 493 F.3d 479, 482 (5th Cir. 2007).

Terry's first prong is met in this case. Corp. Medlin testified that Defendant was driving the car with no license plate. This was a violation of violation of La. R.S. 32:53. There was testimony that a green "in transit" or "dealer tag" was located in the back seat area of the car between the seat and the rear window. The officers testified that it is illegal

for an individual owner of a car to use such a tag.  The evidence establishes objective grounds for this stop.

### Defendant's Continued Detention

As soon as the traffic stop was initiated, Corp. Medlin saw defendant reaching under the front seat.  Medlin reasonably believed that the driver (Defendant) was placing or retrieving something, perhaps a weapon, under the front seat.  This, together with the strong odor of marijuana coming from inside the car, Defendant's lack of a valid driver's license, and the driver and passenger's nervousness, gave Medlin reasonable suspicion that more serious criminal activity was afoot.  Defendant's detention was properly extended beyond what would have been necessary for the issuance of a traffic citation for no license plate. Brigham, at 507.  The search of Defendant's car occurred during the time when Corp. Medlin was attempting to confirm or dispel his reasonable suspicion of additional criminal activity.

### The Search of the Car

### The Smell of Marijuana

As soon as Medlin and Schulz approached the vehicle, they notice a strong smell of marijuana coming from inside the car.  The strong odor gave the officers probable cause to search the vehicle.  It is well settled that warrantless searches of automobiles are permitted by the Fourth Amendment if the officers have probable cause to believe that the vehicle contains contraband or other evidence of a crime. United States v. McSween, 53 F.3d 684, 686 (5th Cir. 1995). The smell of marijuana alone may constitute probable cause to search a vehicle. United States v. Young, 544 Fed.Appx. 276, 277 (5th Cir. 2013); United States

v. Smith, 596 Fed.Appx. 804, 807 (11th Cir. 2015) (search of car was supported by probable cause because of the smell of marijuana).  See also United States v. Koutsos, 2017 WL 5615893 (S.D. Miss. 2017)(probable cause to search airplane existed based on the agents' smell of marijuana).  The officers' probable cause extended to the entire vehicle, including the trunk.  McSween, supra at 687.  The fact that the officers commented that the smell of marijuana appeared to come more from the occupants' persons (once they were removed from the car) does not negate the finding of probable cause.

### Consent to Search

Even if the officers lacked probable cause to search the car, Defendant gave verbal consent to the search.  In determining whether a consent to search is voluntary, the Fifth Circuit reviews several factors, no one of which is dispositive. These factors include:  (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse to consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found. United States v. Jenkins, 46 F.3d 447, 451 (5th Cir. 1995).

At the time Defendant granted consent to search, he was handcuffed and seated in the backseat of Medlin's patrol car.  Medlin acted professionally in requesting consent. Defendant was fairly cooperative and answered Medlin's questions.  Defendant knew he could refuse to consent because Medlin told him that if he did refuse, Medlin was going to request a canine.  Defendant's level of education is not known, but based on Defendant's conversations with Medlin, it appears that Defendant has at least average intelligence.  The

gun and drugs were not hidden very well; they were in a small ice chest in the trunk of the car. Based on the totality of the circumstances, including the credibility of Medlin and Schulz, the undersigned finds that Defendant's consent to search was granted freely and voluntarily. Defendant's consent was not vitiated by Medlin's threat to call for a canine. United States v. Garcia, 2015 WL 8660838 *6 (W.D. La. 2015).

**Defendant's Statements**

Defendant also challenges the voluntariness of his statements. The evidence at the hearing shows that Defendant's statements were made freely and voluntarily. Although the dash camera recording does not reveal it (the audio recording was muffled in a few places), the undersigned finds that Defendant was Mirandized by Medlin during the Terry pat down. The only fact that may lean in Defendant's favor on the voluntariness of his statements is the possibility that Medlin misrepresented that the passenger claimed Defendant owned the drugs and gun. Defendant's brief refers to this as "playing" Defendant and the passenger against one another.

Because Schulz's dash camera recording was not preserved, it is not known with certainty whether this "playing" was based on fact or fiction. The video recording does reveal that Medlin told Defendant and the passenger that both were going to jail unless one of them claimed ownership of the drugs and gun. But even assuming Medlin misrepresented what the passenger said, that fact alone did not overcome Defendant's free will and render Defendant's statements about the drugs and gun involuntary. United States v. Bell, 367 F.3d 452, 462 (5th Cir. 2004)(trickery or deceit is only prohibited to the extent

that it deprives the defendant of knowledge essential to his ability to understand the nature

of his rights and the consequences of abandoning them).

Accordingly;

It is recommended that Defendant's Motion to Suppress be denied.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Crim. P. 59(b)(2),

parties aggrieved by this recommendation have **fourteen (14) days** from the date of this

Report and Recommendation to file specific, written objections with the Clerk of Court,

unless an extension of time is granted under Fed. R. Civ. P. 45(b).  A party may respond to

another party's objections within **fourteen (14) days** from the filing of the objections.

Counsel are directed to furnish a paper courtesy copy of any objections or responses to the

District Judge at the time of filing.

A party's failure to file timely written objections to the proposed findings,

conclusions and recommendation set forth above shall bar that party, except upon grounds

of plain error, from attacking on appeal the unobjected-to proposed factual findings and

legal conclusions accepted by the district court.  See Douglass v. U.S.A.A., 79 F.3d 1415

(5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 5th day of September,

2018.

_____
Mark L. Hornsby
U.S. Magistrate Judge